**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BASF CORPORATION and UCHICAGO ARGONNE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UMICORE N.V., UMICORE USA INC., MAKITA CORPORATION, MAKITA U.S.A. INC., MAKITA CORPORATION OF AMERICA, <br><br> Defendants. | C.A. No. _____ |

**COMPLAINT**

Plaintiffs BASF Corporation ("BASF") and UChicago Argonne, LLC ("Argonne"), for their Complaint against Defendants Umicore N.V. and Umicore USA Inc. (collectively, "Umicore") and Defendants Makita Corporation, Makita U.S.A. Inc., and Makita Corporation of America (collectively, "Makita"), hereby demand a jury trial and allege as follows:

**NATURE OF THE ACTION**

1.      This case is in part about Umicore's and Makita's infringement of BASF's and Argonne's patents related to the chemical compositions of cathode active materials used in lithium-ion batteries.  Patent infringement, however, is just one piece of the unlawful conduct Umicore has used to maintain its position as a primary supplier of such cathode active materials in this industry at the expense of BASF.  Thus, this case is about Umicore's willful and knowing infringement of patents as well as the anticompetitive, tortious, and deceptive conduct Umicore has used for its benefit and BASF's detriment.

2.      Argonne manages Argonne National Laboratory ("ANL") for the U.S. Department of Energy's Office of Science.  Argonne and ANL have developed and patented significant improvements in the field of lithium-ion batteries, including developments relating to the cathode active materials used to improve the characteristics of lithium-ion batteries, including better chemical stability and reduced capacity fade.  Two of those patents are United States Patent No. 6,677,082 ("the '082 Patent"), entitled "Lithium Metal Oxide Electrodes for Lithium Cells and Batteries," and United States Patent No. 6,680,143 ("the '143 Patent"), entitled "Lithium Metal Oxide Electrodes for Lithium Cells and Batteries" (collectively referred to herein as the "BASF/Argonne patents").  Argonne is the assignee of those patents, and BASF has an exclusive license to those patents, subject to preexisting license grants (the "Exclusive License").

3.      BASF is the world's leading chemical company, well-known and well-regarded for manufacturing products across a wide variety of industries ranging from plastics to crop protection to oil and gas.  In the last several years, BASF has acquired and developed production facilities for manufacturing cathode active materials for lithium-ion batteries.  Argonne has now partnered with BASF to commercialize the technology in the '082 and '143 patents, granting BASF an Exclusive License under the BASF/Argonne patents in order to further develop and commercialize the cathode active materials technology.  BASF has been producing materials disclosed and claimed in the '082 and '143 patents for use in lithium-ion batteries and is able to supply those materials commercially on a large scale.

4.      Despite Argonne's important developments in lithium-ion battery technology and BASF's investments in commercializing that technology, Umicore, a rival producer of cathode active materials for lithium-ion batteries, has willfully sought to prevent BASF from entering the

2

market while at the same time selling its own materials that are used to infringe the '082 and '143 patents.  Umicore has conducted its marketing and sales activities knowing that lithium-ion batteries and cathodes incorporating its materials infringe the BASF/Argonne patents.  One of the companies importing into and selling products in the United States that incorporate Umicore's cathode active materials is Makita.

## THE PARTIES

5.      Plaintiff BASF Corporation is a Delaware corporation with a principal place of business at 100 Campus Drive, Florham Park, New Jersey 07932.

6.      Plaintiff UChicago Argonne, LLC, is an Illinois corporation with a principal place of business at 9700 S. Cass Avenue, Lemont, Illinois 60439.

7.      On information and belief, Defendant Umicore N.V. is a company organized under the laws of Belgium, with a principal place of business at Broekstraat 31 Rue de Marais, 1000 Brussels, Belgium.

8.      On information and belief, Defendant Umicore USA Inc. is a Delaware corporation with a principal place of business at 3600 Glenwood Avenue, Suite 250, Raleigh, North Carolina 27612.

9.      On information and belief, Defendant Makita Corporation is a company organized under the laws of Japan, with a principal place of business at 3-11-8, Sumiyoshicho, 446-0072 Anjo 446-0072 Aichi, Japan.

10.      On information and belief, Defendant Makita U.S.A. Inc. is a California corporation with a principal place of business at 14930 Northam Street, La Mirada, California 90638.

11.     On information and belief, Makita Corporation of America is a Georgia corporation with a principal place of business at 2650 Buford Highway, Buford, Georgia 30518.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 for Argonne and BASF's claims arising under the patent and antitrust laws of the United States, including 35 U.S.C. § 271 *et seq.* and 15 U.S.C. § 2 *et seq.*  The Court has jurisdiction pursuant to 28 U.S.C. § 1367 for BASF's claims arising under Delaware's state statutory and common law.

13.     The Court has personal jurisdiction over Defendant Umicore USA Inc. because it is a Delaware corporation.

14.     The Court has personal jurisdiction over Defendant Umicore N.V.[1] under Federal Rule of Civil Procedure 4(k)(2) because, on information and belief, it is not subject to jurisdiction in any state's courts of jurisdiction, and because exercising jurisdiction is nevertheless consistent with the United States Constitution given that Umicore N.V. has sufficient contacts with the United States that relate to the claims in this case.  On information and belief, a non-exhaustive list of Umicore N.V.'s contacts with the United States that relate to the allegations in this case include: (a) Umicore N.V. has delivered its products into the stream of commerce with the knowledge, understanding, and expectation that they will be incorporated into products purchased and sold in the United States; (b) Umicore N.V., either directly or through entities it wholly owns and controls, maintains offices, factories, and research facilities in 15 locations throughout the United States, including a location in Michigan that engages in

---

[1] On information and belief, Umicore S.A., Umicore N.V., and Umicore S.A./N.V. refer to the same entity.  On information and belief, it is custom in Belgium for entities to use the S.A. and N.V. designations interchangeably, as one is the French designation and the other the Dutch designation, respectively.

sales and marketing activities as well as applied technology research for Umicore N.V.'s rechargeable battery division; (c) Umicore also has sent employees to attend relevant battery trade conferences in the United States on at least two occasions in Novi, Michigan, and Ft. Lauderdale, Florida; (d) around 2005, a representative from Umicore N.V.'s Specialty Oxides and Chemicals group arranged a meeting in the United States in order to negotiate with an American corporation for the opportunity to supply the company with lithium-ion battery materials; and (e) Umicore N.V. met with Argonne in the United States on multiple occasions to discuss a license for the BASF/Argonne patents.

15.     The Court has personal jurisdiction over Makita Corporation, Makita U.S.A., Inc., and Makita Corporation of America because, on information and belief, those Defendants have committed acts of infringement in the District of Delaware, including at least because they each (directly and/or through their subsidiaries, divisions, groups, or distributors) advertise, market, offer for sale, import for sale and/or sell the infringing products at issue in this case in the District of Delaware.

16.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## FACTUAL BACKGROUND

### *Lithium-Ion Battery Technology*

17.     Lithium-ion batteries are used in a wide variety of rechargeable electronic devices sold worldwide, including power tools, smartphones, tablets, laptop computers, cameras and camcorders, and electric, hybrid, and plug-in electric vehicles.

18.     Lithium-ion batteries include electrodes (a cathode and an anode), with lithium ions passing between the cathode and the anode during the batteries' charge and discharge ("use") cycles.   The cathodes for lithium-ion batteries can contain different chemical

compositions, and each composition provides a different combination of energy, power, safety, life, and cost benefits. Until recently, lithium-ion battery cathodes composed of lithium cobalt oxide ("LCO") dominated the market. But beginning around 2006, the use of lithium-ion battery cathodes composed of lithium with nickel, cobalt, and another transition metal such as manganese increased substantially. By 2011, an estimated 32% of the lithium-ion batteries made used a cathode composed specifically of nickel, cobalt, and manganese ("NCM"), and that number is expected to increase to 40% by 2020.

### *The BASF/Argonne Patents Cover Two-Phase NCM Materials for NCM Cathodes*

19.     On January 13, 2004, the United States Patent & Trademark Office issued the '082 Patent, entitled "Lithium Metal Oxide Electrodes for Lithium Cells and Batteries." (Ex. A.) Argonne is the assignee and owner of the '082 patent. BASF has an exclusive license to the '082 patent.

20.     On January 20, 2004, the United States Patent & Trademark Office issued the '143 Patent, entitled "Lithium Metal Oxide Electrodes for Lithium Cells and Batteries." (Ex. B.) Argonne is the assignee and owner of the '143 patent. BASF has an exclusive license to the '143 patent.

21.     The '082 and '143 patents (the "BASF/Argonne patents") disclose NCM cathodes made from NCM materials containing an excess amount of lithium and having two phases, referred to respectively in the claims of the patents as the "$LiMO_2$" and "$Li_2M'O_3$" components of the material. The "excess" lithium incorporated in the cathode active material drives the formation of the second phase, $Li_2M'O_3$. In addition, the excess lithium increases the capacity of the battery, improves the cathode's chemical stability, and provides improved battery characteristics, such as a reduction in capacity fade.

22.     Around 2009, BASF was looking at entering the battery market, and after conducting research and the required due diligence, BASF recognized that Argonne had developed significant cathode technology.  In May 2009, BASF licensed the '082 and '143 patents from Argonne.  By scaling-up the Argonne technology, BASF knew it would be positioned to enter the lithium-ion battery market and supply NCM materials to manufacturers of lithium-ion batteries.

23.     To date, BASF has supplied samples of its NCM cathode materials to numerous worldwide manufacturers of lithium-ion batteries.  BASF manufactures the materials at three locations in the United States: "precipitation" of NCM precursor material occurs in Troy, Michigan, "drying" occurs in Louisville, Kentucky; and "calcination" of the precursor materials occurs in Elyria, Ohio.  BASF also procures precursor materials from third parties and BASF has recently announced its formation of a joint venture with Toda in Japan where both precursor precipitation and calcination production capacity is available.  BASF's NCM cathode active materials have both $LiMO_2$ and $Li_2M'O_3$ phases, as required by the BASF/Argonne patents.

*Umicore Makes and Sells a Dual-Phase NCM Material for NCM Cathodes*

24.     Umicore also makes and sells NCM[2] materials for use in NCM cathodes. Umicore sells its NCM cathode active material for use in lithium-ion batteries made for power tools, portable electronics, electric, hybrid electric, and plug-in vehicles, and stationary energy storage devices.

25.     Umicore bills itself as the leading global supplier of cathode materials.  One out of every five rechargeable batteries ever made contains Umicore materials, according to

---

[2] Umicore refers to its nickel, manganese, and cobalt cathode active materials as "NMC" materials, while BASF refers to its product as "NCM" materials.  That difference in naming convention is simply a labeling and marketing distinction; it does not reflect a difference in the products' chemical structure.

Umicore.   Umicore maintains a substantial presence across multiple markets for lithium-ion cathode materials.  For example, Umicore controls 50% of the market for LCO cathodes.  And its share of the market for NCM cathode active materials grew exponentially from 0% in 2008, to 27% in March 2014, to 31% just six months later in September 2014.

26.     Umicore is the largest supplier of NCM cathode active materials, with a 31% market share by sales volume, more than twice that of any other competitor.

27.     Umicore claims that it supplies "all key players in the battery industry."  Industry reports indicate that Umicore's customers include the largest battery cell manufacturers in the world, who, combined, account for 93% of the market for cylindrical lithium-ion battery cells (which are used in a variety of products, including laptop computers, power tools, and e-bikes).

28.     The market for battery materials is forecasted to grow by 30% annually until 2020, and Umicore is prepared to capture a significant percentage of the expanding market, including 50% of the market for NCM battery materials for automotive batteries.  For instance, Umicore touts that it is increasing its production capacity.  Umicore seeks to monopolize the market for NCM materials (the relevant market).

29.     On information and belief, and based on investigation, Umicore's NCM materials contain excess lithium and the two phases, $LiMO_2$ and $Li_2M'O_3$, claimed in the BASF/Argonne patents.

30.     For instance, the NCM material in Makita's 18V LXT Lithium-Ion 3.0 Battery (model BL1830) contains two phases, $LiMO_2$ and $Li_2M'O_3$.  On information and belief including Umicore's public statements, the cathode active material in Makita's battery packs for cordless drills is Umicore's NCM material.

*Umicore Purports to Make Its NCM Material under License to
a 3M Patent that Is Limited to Single-Phase NCM Materials*

31.     3M is the owner of three patents that also relate to materials for cathodes: U.S. Patent Nos. 6,660,432, 6,964,828, and 8,241,791 (collectively, the "3M patents").  The priority dates for the BASF/Argonne patents pre-date those of the 3M patents.

32.     The 3M patents disclose and are expressly limited to cathodes having NCM materials that are only a "single phase."

33.     On information and belief, including based on public statements by Umicore, 3M has licensed the 3M patents to Umicore.

*Umicore Tells the Industry that Existing NCM Materials Are Single Phase and
Therefore Covered by the 3M Patents, not the BASF/Argonne Patents*

34.     At the May 2014 Advanced Automotive Battery Conference, Dong Joon Ihm, the Director of Global Applied Technology for Umicore told a large audience of purchasers, manufacturers, and researchers of NCM materials that Umicore has a license to the 3M patents and suggested that the BASF/Argonne patents do not cover existing commercial NMC materials.

35.     At the July 2014 China International Battery Fair, Umicore presented powerpoint slides to a large audience of purchasers, manufacturers, and researchers of NCM materials that the BASF/Argonne patents do not cover existing NCM materials because the patents exclude single-phase NCM materials.  Umicore further told that audience that only the 3M patents cover existing commercial NCM materials, that Umicore has a license to the 3M patents, and that purchasing NCM materials from Umicore provides freedom to operate for manufacturers producing and using NCM cathodes.  Umicore also showed and discussed press releases from 3M stating that the value of the 3M patents lies in the fact that they are directed to single phase and solid solution materials.

36.     Those statements are false because commercially available NCM materials, including those NCM materials manufactured by Umicore, regularly contain excess lithium and are dual phase.  Manufacturers desire to produce high capacity (long run time) batteries, and dual-phase NCM materials containing excess lithium improve the capacity and functionality of lithium-ion batteries.

37.     On information and belief including for the reasons described below, Umicore knew these statements were false.  By its conduct, Umicore has created in the industry a putative requirement of a 3M patent license, which presents a significant barrier to any potential suppliers seeking to enter the market.  And it is a barrier constructed willfully by Umicore on false pretenses.

### Umicore Knows that Existing Umicore NCM Materials Are Dual Phase and Therefore Covered by the BASF/Argonne Patents, not the 3M Patents

38.     Standard industry tests confirm that existing Umicore NCM materials contain the two phases required by the BASF/Argonne patents, not the single phase disclosed in the 3M patents.  For instance, the NCM cathode material in Makita's 18V LXT Lithium-Ion 3.0 Battery (model BL1830) contains two phases, the $LiMO_2$ phase and the $Li_2M'O_3$ phase.

39.     Transmission electron microscopy ("TEM") is a well-known and widely accepted analytical technique employed in the lithium-ion battery industry for analyzing NCM materials and can be used to determine whether such materials are single or dual-phase.  Indeed, the BASF/Argonne patents explain that the patented, dual-phase NCM materials and other NCM materials can be "unequivocally distinguished from one another" using TEM.[3]  Based on testing, including TEM with electronic diffraction and Energy Dispersive X-ray Spectroscopy ("EDS")

---

[3] U.S. Patent No. 6,677,082, col. 4, ll. 26-28; U.S. Patent No. 6,680,143, col. 5, ll. 47-49.

analysis, BASF confirmed that the NCM cathode material in Makita's 18V LXT Lithium-Ion 3.0 Battery (model BL1830) contains two phases, $LiMO_2$ and $Li_2M'O_3$.

40.     On information and belief, Umicore's processing recipe for its NCM material will show Umicore uses excess lithium to make its NCM material, which results in a second phase. Because excess lithium improves certain features of NCM cathodes, the use of excess lithium is common in the industry.  Scientific literature in the field indicates that NCM materials contain excess lithium and are the dual-phase material claimed in the BASF/Argonne patents.[4] Moreover, Umicore is familiar with the technology disclosed in the BASF/Argonne patents, and it knows that excess lithium improves NCM cathodes.  In discussions in 2005 and 2009, Umicore approached Argonne, seeking to license several patents related to lithium-ion battery technology, including the BASF/Argonne patents.  During that period, Dr. Michael Thackeray (the first-listed inventor on the BASF/Argonne patents) identified the BASF/Argonne patents by patent number and presented information to Umicore explaining the chemistry and electrochemical operation of the cathodes covered by those patents.  In addition, Dr. Thackeray specifically explained to Umicore in 2005 that dual-phase NCM cathodes with excess lithium exhibit improved electrochemical behavior and properties.

41.     On information and belief, Umicore knows these and/or other facts which, contrary to its public statements at industry conferences, prove that there are NCM materials, including its own NCM materials, that contain excess lithium and are dual phase.  Umicore is specifically aware of the BASF/Argonne patents, the excess lithium and dual-phase technology disclosed in those patents, and the importance of that technology to lithium-ion battery use and

---

[4] Karalee Jarvis, *et al*., Atomic Structure of a Lithium-Rich Layered Oxide Material for Lithium-Ion Batteries: Evidence of a Solid Solution, *Chem. Mater.* 3615 (2011).

functionality.   Umicore also knows that the 3M patents are limited to single-phase materials while only the BASF/Argonne patents cover dual phase.

### Umicore Threatens to Sue a Potential BASF Customer

42.     In 2012, BASF began negotiations with a potential customer and lithium-ion battery manufacturer about BASF supplying that potential customer with NCM materials.  BASF provided the potential customer with sample NCM active cathode materials, the parties reviewed and discussed the potential customer's analytical and electrochemical results, and as a result of those discussions BASF provided additional samples.   The parties also discussed in detail BASF's production capabilities, BASF's pricing, and the potential customer's freedom to operate.   As the parties pursued these negotiations, BASF was considered to be viable, long-term, high-quality supplier for NCM cathode materials.   However, on information and belief, Umicore was and had been a major supplier of NCM materials to the potential customer.  According to the potential customer's representative, after Umicore learned that the potential customer was considering BASF as a supplier of NCM materials, Umicore made clear that if the potential consumer bought NCM materials from BASF, they would face legal action, suggesting a threat of suit based on the 3M patents.   Any such patent assertion would be based on the allegation that BASF's NCM materials contain only a single phase, which BASF believes discovery will show Umicore knows to be false.

### BASF's Injury

43.     BASF is licensed under the BASF/Argonne patents to market, produce, and sell dual-phase NCM active cathode materials with excess lithium.   Umicore, however, is not licensed under the BASF/Argonne patents.  Although Umicore previously approached Argonne in an attempt to acquire a license to the BASF/Argonne patents, Argonne and Umicore did not

agree to a license.  Instead, Umicore has a license to the 3M patents which gives Umicore only the right to make and sell single-phase NCM materials; they are not licensed and not permitted to market, produce, or sell dual-phase NCM active cathode materials with excess lithium because those materials practice the BASF/Argonne patents, not the 3M patents.  Umicore nevertheless makes and sells dual-phase NCM materials having excess lithium; and because Umicore is aware of the BASF/Argonne patents and the scope of their claims disclosing dual-phase NCM cathodes, its infringement of the BASF/Argonne patents is willful.

44.     Although Umicore does not have a license to the BASF/Argonne patents and it knows that it makes and sells dual-phase NCM material with excess lithium, Umicore's conduct and baseless assertions and threats regarding patent protection in the NCM materials market have effectively excluded BASF from the NCM materials market and furthered Umicore's anticompetitive position.  Despite competitive pricing, quality materials, and ample production capacity, some customers are not willing to purchase NCM materials from BASF as a result of Umicore's private and public conduct.

45.     These exclusionary practices have resulted in significant financial harm to BASF.  BASF has lost out on billions of dollars of potential revenue from selling NCM materials because of Umicore's misrepresentations to major purchasers in the NCM materials market.  In addition, BASF has lost the ability to compete as a supplier for electric vehicle platforms expected to launch in 2016 and 2017.

46.     Further, BASF's reputation in the lithium-ion battery industry, both to NCM-material purchasers and NCM-material manufacturers, has been damaged by Umicore's deceptive, tortious, and anticompetitive conduct.

47.     Finally, BASF expended significant resources in developing the capacity to manufacture high quantities of NCM cathode materials for lithium-ion batteries, and Umicore's infringing and exclusionary conduct is preventing BASF from recouping any returns on those substantial investments.   For instance, in 2012 BASF opened its new calcination production facility in Elyria, Ohio, which required an investment of more than $50 million.   Moreover, construction of the Elyria facility was supported by a $24.6 million grant from the U.S. Department of Energy, meaning Umicore's acts of infringement and exclusion are damaging not only BASF but also the United States Government's investments in improved battery technology.

## COUNT ONE
## INDIRECT INFRINGEMENT OF THE '082 PATENT BY UMICORE

48.     BASF and Argonne incorporate and reallege all previous paragraphs as if fully set forth herein.

49.     On information and belief, Umicore produces and sells NCM materials that are especially made for or adapted for use in infringing the '082 Patent.

50.     Umicore's NCM material is not a staple article or a commodity of commerce suitable for substantial non-infringing uses.

51.     Umicore has actual knowledge of the '082 Patent.

52.     On information and belief, Umicore has been and is encouraging others to directly infringe the '082 Patent with knowledge of that infringement.

53.     On information and belief, Umicore imports its NCM materials into the United States to be used in infringing products, and knows its customers import its NCM materials into the United States in infringing products and/or to be used in infringing products, including in Makita's lithium-ion battery packs for cordless power tools.

54.     Umicore knows that cathodes for lithium-ion batteries containing Umicore's NCM materials infringe the '082 Patent, and knows that customers, including Makita, are directly infringing the '082 patent with Umicore's encouragement and aid.

55.     Umicore has knowledge of the '082 patent, knowledge that its actions as described above are inducing and/or contributing to the infringement of the '082 patent, and knowledge that its NCM material lacks substantial non-infringing uses.

56.     Umicore has been and is indirectly infringing the '082 Patent by inducing infringement and/or contributing to the infringement of the '082 patent by others.

57.     Umicore's infringement has been willful.

## COUNT TWO
## DIRECT INFRINGEMENT OF THE '082 PATENT BY MAKITA

58.     BASF and Argonne incorporate and reallege all previous paragraphs as if fully set forth herein.

59.     Makita makes, uses, sells, offers for sale, and/or imports into the United States lithium-ion battery packs for Makita cordless drills.

60.     On information and belief, Makita's lithium-ion battery packs for Makita cordless drills contain NCM materials, including NCM materials supplied by Umicore.

61.     Defendant Makita has been and is directly infringing the '082 patent by making, using, offering to sell, and/or selling in the United States products containing lithium-ion batteries produced using NCM materials, including NCM materials supplied by Umicore.

## COUNT THREE
## INDIRECT INFRINGEMENT OF THE '143 PATENT BY UMICORE

62.     BASF and Argonne incorporate and reallege all previous paragraphs as if fully set forth herein.

63.     On information and belief, Umicore produces and sells NCM materials that are especially made for or adapted for use in infringing the '143 Patent.

64.     Umicore's NCM material is not a staple article or a commodity of commerce suitable for substantial non-infringing uses.

65.     Umicore has actual knowledge of the '143 Patent.

66.     On information and belief, Umicore has been and is encouraging others to directly infringe the '143 Patent with knowledge of that infringement.

67.     On information and belief, Umicore imports its NCM materials into the United States to be used in infringing products, and knows its customers import its NCM materials into the United States in infringing products and/or to be used in infringing products, including in Makita's lithium-ion battery packs for cordless power tools.

68.     Umicore knows that cathodes for lithium-ion batteries containing Umicore's NCM materials infringe the '143 Patent, and knows that customers, including Makita, are directly infringing the '143 patent with Umicore's encouragement and aid.

69.     Umicore has knowledge of the '143 patent, knowledge that its actions as described above are inducing and/or contributing to the infringement of the '143 patent, and knowledge that its NCM material lacks substantial non-infringing uses.

70.     Umicore has been and is indirectly infringing the '143 Patent by inducing infringement and/or contributing to the infringement of the '143 patent by others.

71.     Umicore's infringement has been willful.

**COUNT FOUR**
**DIRECT INFRINGEMENT OF THE '143 PATENT BY MAKITA**

72.     BASF and Argonne incorporate and reallege all previous paragraphs as if fully set forth herein.

73.     Makita makes, uses, sells, offers for sale, and/or imports into the United States lithium-ion battery packs for Makita cordless drills.

74.     On information and belief, Makita's lithium-ion battery packs for Makita cordless drills contain NCM materials, including NCM materials supplied by Umicore.

75.     Defendant Makita has been and is directly infringing the '143 patent by making, using, offering to sell, and/or selling in the United States products containing lithium-ion batteries produced using NCM materials, including NCM materials supplied by Umicore.

## COUNT FIVE
## VIOLATION OF FEDERAL ANTITRUST LAW

76.     BASF incorporates and realleges all previous paragraphs as if fully set forth herein.

77.     Umicore has violated § 2 of the Sherman Antitrust Act (15 U.S.C. § 2) by unlawfully attempting to acquire and maintain a monopoly in the market for NCM materials, including by excluding BASF from that market by deliberately misleading current and prospective NCM-materials purchasers about its own and BASF's NCM materials and intellectual property.

78.     As a result of Umicore's unlawful conduct and attempted monopolization, BASF has suffered a substantial antitrust injury, including the loss of significant revenue from the sale NCM materials.

## COUNT SIX
## VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT

79.     BASF incorporates and realleges all previous paragraphs as if fully set forth herein.

80.     Umicore has violated § 2532 of the Delaware Deceptive Trade Practices Act (6 Del. C. § 2532).

81.    Specifically, Umicore unlawfully represents that its NCM materials and cathodes made therefrom have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, in violation of § 2532(a)(5); Umicore unlawfully disparages the goods, services, or business of BASF by false or misleading representation of fact in violation of § 2532(a)(8); and Umicore unlawfully engages in conduct which similarly creates a likelihood of confusion or of misunderstanding in violation of 2532(a)(12).

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

82.    BASF incorporates and realleges all previous paragraphs as if fully set forth herein.

83.    Umicore has committed common law tortious interference with a prospective economic advantage by unlawfully interfering with BASF's efforts to supply a potential customer with NCM materials.

84.    BASF had a reasonable probability of reaching an agreement to supply NCM materials to that potential customer for use in its lithium-ion batters.  Umicore, in order to prevent BASF from entering the NCM materials market and supplying NCM materials to that potential customer, intentionally interfered with those negotiations by threatening to bring or cause a lawsuit for infringement of the 3M patents, despite Umicore knowing that the 3M patents do not cover existing NCM materials since those materials have two phases.

85.    Umicore's threats proximately caused the dissolution of the prospective business relationship between BASF and its potential customer, causing BASF substantial financial loss.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Umicore and Makita as follows:

A.      That Umicore has indirectly infringed one or more claims of the '082 patent;

B.      That Makita has directly infringed one or more claims of the '082 patent;

C.      That Umicore has indirectly infringed one or more claims of the '143 patent;

D.      That Makita has directly infringed one or more claims of the '143 patent;

E.      That Umicore has violated § 2 of the Sherman Antitrust Act;

F.      That Umicore has violated § 2532 of the Delaware Deceptive Trade Practices Act;

G.      That Umicore has committed tortious interference with prospective economic advantage;

H.      An injunction against Umicore and its officers, agents, servants, employees, all parent and subsidiary entities, all assignees and successors in interest, and those persons or entities acting in concert or participation with Umicore, including distributors and customers, enjoining them from further infringement of the '082 and '143 patents;

I.      An injunction against Makita and its officers, agents, servants, employees, all parent and subsidiary entities, all assignees and successors in interest, and those persons or entities acting in concert or participation with Makita, including distributors and customers, enjoining them from further infringement of the '082 and '143 patents;

J.      An injunction against Umicore and its officers, agents, servants, employees, all parent and subsidiary entities, all assignees and successors in interest, and those persons or entities acting in concert or participation with Umicore, including distributors and customers, enjoining them from further anticompetitive, tortious, and deceptive trade practices;

K.      An award of patent infringement damages against Umicore and Makita under 35 U.S.C. § 284, including an accounting and pre- and post-judgment interest, and an award of costs;

L.       An award of treble patent infringement damages against Umicore under 35 U.S.C. § 285 for Umicore's willful infringement;

M.      An award of damages against Umicore for damages caused by Umicore's anticompetitive, tortious, and deceptive trade practices;

N.      An award of treble the damages caused by Umicore's anticompetitive, tortious, and deceptive trade practices under 15 U.S.C. § 15 and 6 Del. § 2533(c), including an accounting and pre- and post-judgment interest, and an award of costs;

O.      An award of reasonable attorneys' fees and expenses pursuant to 35 U.S.C. § 285, 15 U.S.C. § 15, and 6 Del. § 2533(b);

P.       Such other and further relief as this Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims and issues so triable.


Dated: February 20, 2015                          Respectfully submitted,


                                                  By:   /s/ Brian E. Farnan

*Of Counsel*                                             Brian E. Farnan (Bar. No. 4089)
                                                         Michael J. Farnan (Bar No. 5165)
Gregg F. LoCascio, P.C.                                  FARNAN LLP
Sean M. McEldowney                                       919 North Market Street
KIRKLAND & ELLIS LLP                                     12th Floor
655 Fifteenth Street, N.W.                               Wilmington, DE 19801
Washington, D.C.  20005                                  Telephone:  (302) 777-0300
Telephone: (202) 879-5000                                bfarnan@farnanlaw.com
Facsimile: (202) 879-5200

                                                         *Attorney for BASF Corporation*
                                                         *and UChicago Argonne, LLC.*